UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| RONALD D. FRANKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:12-00014 |
| ) | Judge Sharp |
| CITY OF COOKEVILLE, TENNESSEE ) | |
| and ROBERT TERRY, in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

After admittedly calling a superior officer a "lying cocksucker," and surreptitiously recording fellow officers in violation of written policy, Plaintiff Ronald D. Franklin was fired from his job as a patrolman with the City of Cookeville, Tennessee. Plaintiff then filed suit in the Chancery Court for Putnam County, and the case was removed to this Court.

Defendants City of Cookeville and Robert Terry ("Chief Terry") in his individual capacity[1] have filed a Motion for Summary Judgment (Docket No. 12), to which Plaintiff has responded in opposition (Docket No. 19). For the reasons that follow, the Motion for Summary Judgment will be granted, and this case will be dismissed.

## I. DISCUSSION

In his Complaint, Plaintiff raises a number of state and federal claims. The Court discusses those claims under separate sub-headings, and sets forth the facts where necessary to analyze the claims.

---

[1] Official capacity claims against Chief Terry as the Chief of Police, and against Jim Shipley as the City Manager, have been dismissed by agreement of the parties. (Docket No. 8).

1

**A. Denial of Due Process**

In his Complaint, Plaintiff simply alleges that he was "denied due process and other violations of 42 U.S.C. § 1981 and § 1983" (Docket No. 1-1 ¶ 53), but nowhere states any facts which would suggest how that was so. What he does allege is that, before roll call on January 29, 2011, he "made a derogatory remark about Sergeant Weikert," prompting "everyone in the room" to laugh; that he was subsequently called into a meeting with Captain Lee and Sergeant Harrington during which the latter told him to turn off a tape recorder Plaintiff admitted he was using; that he was sent home on paid administrative leave; that he was provided a "Notice of Disciplinary Action" form; that he was terminated on February 1, 2011; that he appealed his termination and was provided a hearing before Chief Terry on February 21, 2011, who upheld the termination decision; and that he was provided yet another hearing on March 30, 2011 before City Manager Shipley, who also upheld the decision. (Id. ¶¶ 26-46).

It is unclear from Plaintiff's filings whether he asserts the procedures employed by Defendants pre- or post- termination (or both) violated his right to due process. Insofar as he is alleging the former, that claim fails because, pre-termination, all a public employee is entitled to is oral or written notice of the charges and an opportunity to explain. See Upton v. City of Royal Oak, 2012 WL 166204 at *8 (6th Cir. May 11, 2012). "'To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.'" Farhat v. Jopke, 370 F.3d 580, 590 (6th Cir. 2004) (quoting Loudermill v. Cleveland Bd. of Educ., 470 U.S. 532, 546 (1985)). Plaintiff does not provide any evidence, or even allege, that he was terminated before he learned of the allegations against him, or that he was not provided an opportunity to explain his actions.

Presumably, then, Plaintiff's due process claim is based upon the alleged inadequacies of his

post-termination hearings.  In response to Defendants' Motion for Summary Judgment, Plaintiff argues that the hearings were "unconstitutional" because some of the participants were allegedly biased.  In this regard, Plaintiff claims that Major Dukes "made a recommendation to the Chief concerning what should happen to Plaintiff," even though "Major Dukes had already heard Plaintiff's side of what occurred on January 29, 2011."  (Docket No. 19 at 5).  He also contends City Manager Jim Shipley was biased because he "is an official of the City of Cookeville and already knew the City of Cookeville Police Department's facts concerning Plaintiff's termination before the hearing was ever held," and "[s]o, going into the hearing, he had already decided whether or not Plaintiff should or should not be reinstated to his position. . . ." (Id. at 6).[2]  Plaintiff attempts to analogize the situation to that of biased jurors, writing:

> The only way that anyone can make an unbiased determination of the facts of a situation is if that person has never heard any of the facts from either side.  This is why people chosen for jury duty are dismissed if they have any knowledge of the facts of a case prior to being seated on the jury; because that is the only way for the person on trial to be given fair, equal protection under the law and for the people on the jury to be completely unbiased in their decisions.

(Id. at 5).

Clearly, "due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased." Heyne v. Metropolitan Nashville Public Sch, 655 F.3d 556, 566 (6th Cir. 2011).  But there is a "presumption of honesty and integrity in policymakers with decisionmaking power," Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 497 (1976), not a presumption of bias.  See Keith v. Barnhart, 473 F.3d 782, 788 (7th Cir. 2007) ("When reviewing the

---

[2] In response to Defendants' Statement of Material Facts, Plaintiff "avers that th[e] hearing[s were] unbiased and unfair towards him."  (Docket No. 20, Responses to ¶¶ 7-9).  He does not cite the record for these "averments" as required by Local Rule 54.01(c).

3

evidence, we begin with the presumption that the hearing officer is unbiased"); Jennings v. Wentzville R-IV Sch. Dist., 397 F.3d 1118, 1124 (8th Cir. 2005) (citation omitted) ("the court's analysis begins 'with a presumption that decision-makers are honest and impartial'"); Gwinn v. Awmiller, 354 F.3d 1211, 1220 (10th Cir. 2004) (citation omitted) ("'because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated'").

The notion that a hearing officer is presumed to be unbiased applies even in the context of a public employer who is a decisionmaker. As the Tenth Circuit has cogently explained:

> In many small public agencies human resource personnel wear multiple hats. Thus, the "contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a . . . difficult burden of persuasion to carry." Withrow [v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456 (1975)]. The fact "that [an agency] had entertained . . . views as the result of its prior *ex parte* investigations did not necessarily mean that the minds of its members were irrevocably closed on the subject . . . ." Id. at 48, 56-58, 95 S.Ct. 1456 (citation omitted). Thus, our case law generally rejects the idea that a combination of adjudicatory and investigatory functions is a denial of due process. Id. at 51, 56-58, 95 S.Ct. 1456; see also, Hicks [v. City of Watonga, 942 F.2d 737, 748 (10th Cir. 1991)]. Otherwise,
>
> > almost anytime an employee in a small bureaucracy-where everyone knows everyone else-clashes with his superiors, the body elected to make disciplinary decisions will be constitutionally disqualified from doing so. This contravenes the Supreme Court's clear desire to leave such decisions in the hands of the bodies duly elected to make them.
>
> Hicks, 942 F.2d at 748 (citations omitted). We also will not indulge a presumption against a public employer merely because of his ultimate personnel decision.

Riggins v. Goodman, 572 F.3d 1101, 1112-13 (10th Cir. 2009).

Here, Plaintiff offers nothing but bald and conclusory assertions to suggest bias upon the part of the decisionmaker, and, for that reason alone, his due process claim fails. It also fails for a more fundamental reason: he has not established a property interest in his continued employment as a

4

Cookeville police officer.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" Loudermill, 470 U.S. at 538 (citation omitted). Where public employees are not subject to removal at-will, those "employees have a state-law-created, constitutionally protectable property interest in maintaining their current employment." Kizer v. Shelby County Gov't, 649 F.3d 462, 466 (6th Cir. 2011). "Conversely," at-will "employees have no property right in maintaining their jobs; and the State may terminate them summarily." Id. (collecting cases).

Plaintiff has the burden of establishing that he has a property interest in his employment by pointing to state law, a contract, or an agreement, policies or procedures that instill a legitimate expectation of job security. See Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 766 (6th Cir. 2010); Brown v. City of Niota, 214 F.3d 718, 720 (6th Cir. 2000). In this case, Plaintiff offers nothing which establishes any such property interest,[3] while Defendants note that Tennessee is an "at-will" state, and that the City of Cookeville Policies and Procedures Manual specifically informs "'all employees that the employment relationship may be terminated by either the City or the employee at any time for any reason.'" (Docket No. 11-1 at 7, quoting City of Cookeville Personnel Policies and Procedures Manual § 1). The fact that Plaintiff was a municipal police officer is not sufficient, standing alone, to show a property interest. See Beech v. Fuller, 172 Fed. App'x 111, 112 (6th Cir. 2006) (City of Lewisburg, Tennessee police officer was at-will employee, and city employment manual's failure to include definite term of employment raised presumption of at-will employment);

---

[3] Interestingly enough, Plaintiff pleads a claim for common law retaliation, an essential element of which is that he was an at-will employee. See Guy v. Mutual Ins. Co. of Omaha, 79 S.W.3d 538, 535 (Tenn. 2008).

Durham v. City of Algood, 114 Fed. App'x 741, 742 (6th Cir. 2004) (affirming dismissal of due process claim by former City of Algood, Tennessee police officer who was an at-will employee); compare Wagner v. City of Memphis, 971 F.Supp. 308, 317 (W.D. Tenn. 1997) (Memphis police officer "derives a property interest from the Civil Service Ordinances of the City of Memphis, which require just cause for discharge of covered City employees").

Summary judgment will be granted on this claim because Plaintiff has not shown he had a property interest in continued employment, or that, even if he did, he was denied due process.

### B. Right to Record Conversations

One of the reasons for Plaintiff's termination was that he recorded one or more conversations he had with fellow officers in violation of City of Cookeville written policy. Plaintiff argues violation of the policy cannot serve as a valid basis for termination because the policy, itself, is unconstitutional.

Recording, or attempting to record conversations, in violation of written policy can serve as a legitimate non-discriminatory reason for discharge. See Perkovich v. Roadway Exp. Inc., 1997 WL 26457 at *7 (6th Cir. January 22, 1997); Jones v. St. Jude Medicals S.C., Inc., 823 F. Supp.2d 699, 739 (S.D. Ohio 2011); Moray v. Novartis Pharmaceuticals Corp., 2009 WL 82471 at *11 (M.D. Tenn. Jan. 9, 2009). Notwithstanding such authority, Plaintiff claims that it is unconstitutional for the City of Cookeville to have a policy that bans surreptitious recording. He does so by making the wholly unsupported declaration: "It is a constitutional right to [sic] all American citizens to record a conversation to which they are a party." (Docket No. 19 at 4). He also does so by relying on a faulty syllogism, to wit, that (1) the Fourteenth Amendment makes it unlawful for the "State to make or enforce any law which shall abridge the privileges or immunities of citizens of the United States,'"; (2) one of the privileges of citizens of this state is to record conversation pursuant to Tenn.

6

Code Ann. § 39-13-601(5); and, (3) by punishing him for recording conversations which is protected by state statute, Defendants deprived him of his privileges and immunities under the Fourteenth Amendment.

Forgetting that the City of Cookeville's manual is not an action of the State which makes or enforces any law (Plaintiff's claim is that it actually ignores the law), the fact that the policy in the manual *might* violate state law is not grounds for a Fourteenth Amendment claim, even when that policy is enforced.

Rights conferred under the constitution, including those under the Fourteenth Amendment, are vindicated pursuant to 42 U.S.C. § 1983. See Aldini v. Johnson, 609 F.3d 858, 855 (6th Cir. 2010); Johnson v. City of Detroit, 446 F.3d 614, 618 (6th Cir. 2006). Section 1983, however, is "'limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law.'" Michael v. Ghee, 498 F.3d 372, 375 (6th Cir. 2007) (quoting, Neinast v. Bd. of Trs. of the Columbus Metro. Library, 346 F.3d 585, 597 (6th Cir.2003)); see Adair v. Charter County of Wayne, 452 F.3d 482, 492 (6th Cir. 2006) (element of a Section 1983 claim is that plaintiff was deprived of a constitutional right). Because Plaintiff's complaint is that the police department violated a right secured by state law when it prohibited him from tape recording, he fails to state a claim under Section 1983 for the deprivation of a right secured under the Fourteenth Amendment, and Defendants are entitled to summary judgment on this claim.

## C. **Denial of Equal Protection**

Plaintiff argues he was denied equal protection under the Fourteenth Amendment because, even though his verbal characterization of Sergeant Weikert was admittedly quite ugly one morning before roll call, and even though he had previously received written counseling notices for both taping conversations and for disrespectful comments about superiors, "there have been other

7

members of the City of Cookeville Police Department that have done the exact same thing as Plaintiff and they are still employed there," and "there have been other members of the City of Cookeville Police Department who have done worse things than Plaintiff did and they were not terminated and are still employed there. . . ." (Docket No. 19 at 7). Plaintiff then lists the "[t]hings done by other members of the City of Cookeville Police Department":

> 1) Officer is observed by a task force agent coming and going from a known drug dealer's residence while he is on duty and in uniform. He was terminated but then reinstated by City Manager Jim Shipley. It was rumored that he was reinstated because City Manager Jim Shipley did not want him to be terminated.
>
> 2) Officer is checked out for lunch when an AED call comes in. The officer reports that they are on lunch so the call is transferred to Sergeant Weikert. The other officer was terminated for "failure to follow an order". She was reinstated by City Manager Jim Shipley.
>
> 3) Off-duty officer calls in to dispatch to have a car tag run because he wants to know who the pretty girl is that is driving the car. When TBI investigates why the tag was run in Cookeville, they find out there was no justified reason for it to be ran. The officer was only given a verbal warning.

(Docket No. 19 at 7).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." Bench Billboard Co. v. City of Cincinnati, 675 F.3d 974, 986 (6th Cir. 2012).

Here, Plaintiff offers absolutely nothing which would suggest discrimination which burdens a fundamental right, and continued employment is not a fundamental right for purposes of the Equal Protection Clause. See, Bower v. Village of Mount Sterling, 44 Fed. App'x 670, 675 (6th Cir. 2002) (affirming decision that police officer did not possess a fundamental right to government employment

8

under the Equal Protection Clause); Kleinsmith v. Shurtleff, 571 F.3d 1033, 1047 (10th Cir. 2009) (citation omitted) ("'In the equal protection clause context, the Supreme Court has never recognized a fundamental right to pursue a particular line of employment.'"). Nor has he shown that some identifiable suspect class of which he was member was treated differently. See Aureus Holdings, Ltd. v. Detroit City, 303 Fed. App'x 265, 267 (6th Cir. 2008) (absent evidence that plaintiff was treated differently because of membership in suspect class, equal protection claim was subject to dismissal). That leaves the possibility that Plaintiff was treated differently for irrational reasons under what is known as the "class-of-one" theory.

"[I]n 'class-of-one' claims, 'the plaintiff [does] not allege membership in a class or group' but rather simply 'alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Davis v. Prison Health Services, 679 F.3d 433, 441 (6th Cir. 2012) (citation omitted). "'[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" Id. (citation omitted).

Even if Plaintiff could prove that he was subjected to arbitrary or malicious treatment, he cannot prevail on his equal protection claim because the Supreme Court has held that the class-of-one theory is inapplicable in the public employment context:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
>
> *　　　　*　　　　*
>
> This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide

>   array of factors that are difficult to articulate and quantify. . . . The close relationship between the employer and employee, and the varied needs and interests involved in the employment context, mean that considerations such as concerns over personality conflicts that would be unreasonable as grounds for 'arm's-length' government decisions ( e.g., zoning, licensing) may well justify different treatment of a public employee." . . . Unlike the context of arm's-length regulation, . . . , treating seemingly similarly situated individuals differently in the employment context is par for the course.
>   
>   Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns.

Engquist v. Or. Dep't of Agric., 553 U.S. 591, 609 (2008). Accordingly, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

**D. Other Claims**

In addition to the foregoing, Plaintiff raises First Amendment, common law retaliation, and Tennessee Human Rights Act ("THRA") claims in his Complaint. Even though Defendants addressed each of those claims in their Memorandum in support of their Motion for Summary Judgment, Plaintiff raised no arguments in response.

When a motion for summary judgment is properly made and supported, the non-movant may not merely rest upon the pleading, but must come forward with evidence showing the existence of a material fact requiring trial. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c)(1). "A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" Chicago Title Ins. Corp. v. Magnuson, 487 F.3d 985, 995 (6th Cir. 2012). Nevertheless, the Court has reviewed the record and finds that Defendants are entitled to summary judgment on Plaintiff's remaining claim.

In his Complaint, Plaintiff does not identify the protected speech, but he does claim that his "dismissal for the use of derogatory language deprives him of his protection under the First

10

Amendment to the United States Constitution and the State of Tennessee." (Docket No. 101, Complaint at 2).

"As a public employee, in order to establish a likelihood of success on his § 1983 claim that Defendants denied Plaintiff his First Amendment right to free speech, Plaintiff has to demonstrate that 1) he was disciplined for speech that was directed toward an issue of public concern, and 2) that his interest in speaking as he did outweighed the [employer's] interest in regulating his speech." Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001); see Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citizens who enter government service "must accept certain limitations on [their] freedoms," including limitations on the scope of their First Amendment rights). Here, Plaintiff has shown nothing which would suggest that his calling Sergeant Weikert a "lying cocksucker" addressed a matter of public concern, or that his doing so outweighed the department's interest in ensuring a productive and disciplined workplace. See Jackson v. Leighton, 168 F.3d 903, 908 (6th Cir. 1999) (citation omitted) ("Defendants need not 'tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships'"); Sczygelski v. U.S. Customs and Border Prot. Ag., 419 Fed. App'x 680, 681 (8th Cir. 2011) (citation omitted) ("'Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer.'"); Nixon v. City of Houston, 511 F.3d 494, 498 (5th Cir. 2007) (same).

Plaintiff's common law retaliation claim fails for at least two reasons. First, insofar as it is directed against the City of Cookeville, it is barred as a matter law because, under Tennessee's Governmental Tort Liability Act, "a governmental entity is immune from liability for the common law tort of retaliatory discharge." Baines v. Wilson County, 86 S.W.3d 575, 581 (Tenn. Ct. App.

11

2002). Second, insofar as the claim is directed against Chief Terry, it fails because "Plaintiff has not shown that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights." Riddle v. First Tennessee Bank, 2011 WL 4348298 at *10 (M.D. Tenn Sept. 16, 2011). His assertion that he filed a federal complaint that was dismissed some two years before his termination is insufficient to establish a temporal link. Snodgrass v. Tennessee Dept. of Finance and Admin., 2010 WL 4007218 at *5 (M.D. Tenn. Oct. 12, 2010) (collecting cases for the proposition that, "[i]n this circuit, as well as others, cases that have permitted an inference of retaliation based on proximity of time have consistently been short periods, usually less than six months").

Finally, with respect to the THRA, Plaintiff merely alleges that "he was treated differently than his coworkers." This is insufficient as a matter of law to state a claim, let alone survive summary judgment. There is absolutely no suggestion in the record that Plaintiff, a white male, was discriminated against because of his "race, creed, color, religion, sex, age or national origin in connection with employment," Tenn. Code Ann. § 4-21-101(a)(3), as required by the statute.

### III. CONCLUSION

On the basis of the foregoing, the Court will enter an Order granting Defendants' Motion for Summary Judgment (Docket No. 12), and dismissing this case.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE